UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RICHARD AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 03-1807 (PLF) |
| ) | |
| STEVEN PRESTON,[1] ) | |
| Administrator, Small Business Administration, ) | |
| ) | |
| Defendant. ) | |

OPINION

This matter is before the Court on defendant's motion to dismiss or, in the alternative, for summary judgment.[2]  Since both parties rely on materials outside of the pleadings, the Court is treating this motion as a motion for summary judgment.  Plaintiff Richard America brought this action against his former employer, the Small Business Administration ("SBA"), for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(3) and 2000e-16(c).  Defendant argues that plaintiff fails to state a claim because his allegations of

---

[1]     Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Administrator Steven Preston has been substituted for former Administrator Hector Barreto.

[2]     The papers submitted in connection with this motion include: defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Mot."); plaintiff's Opposition to SBA's Motion to Dismiss and Summary Judgment ("Opp."); Defendant's Reply ("Reply"); Defendant's Supplemental Brief as to Agency Authority to Rescind a Decision ("Def's Supp. Br."); Plaintiff's Response to the SBA's Supplemental Brief ("Pl's Supp. Br."); and Defendant's Reply to Plaintiff's Response to the SBA's Supplemental Brief ("Def's Supp. Reply").

discrimination against the SBA were released by a settlement agreement signed in September 1998.  Plaintiff acknowledges the settlement agreement but claims that the agreement was breached by the defendant and thus does not bar this lawsuit.  Because the Court concludes that plaintiff has stated a claim and that there are genuine issues of material fact in dispute, the Court denies defendant's motion.

## I.  BACKGROUND

Plaintiff, a former employee of the SBA's Office of Financial Assistance ("OFA") in Washington, D.C., filed five administrative complaints of race, sex, and age discrimination against the defendant arising from a 1995 decision to transfer plaintiff to the Kansas City, Missouri office of the SBA and from his alleged constructive discharge in March 1997.  See Complaint ("Compl.") ¶¶ 10-20; Mot. at 2.  Those complaints were resolved by a September 11, 1998 settlement agreement (the "Settlement Agreement") between plaintiff and defendant.  See Settlement Agreement ("Settlement Ag."), Exh. 1 to Mot.  In exchange for the discharge of all of plaintiff's pending claims, defendant paid plaintiff $92,500 and expunged references to these matters from plaintiff's personnel file maintained by the Office of Human Resources.  See Settlement Ag. ¶¶ 1-6.  Paragraph 6 of the Settlement Agreement also stated that "all inquiries [about plaintiff] from prospective employers received by OFA shall be referred to and handled by the Agency's Office of Human Resources."  Id. ¶ 6.

After signing the Settlement Agreement in September 1998, plaintiff searched for alternate employment.  Although several "promising leads" appeared, plaintiff states that "each time, the opportunities seemed to disappear at the stage in the hiring process that reference

checks would normally be conducted." Declaration from Richard America, Att. 1 to Plaintiff's Opposition ("America Decl.") ¶ 4. Suspecting that defendant was not adhering to the provision of the Settlement Agreement requiring it to refer inquiries from prospective employers to the SBA's Office of Human Resources (which would provide a reference without disclosing the details of plaintiff's departure from the SBA), plaintiff retained the services of Documented Reference Check ("DRC"), a reference checking company, to investigate whether defendant was honoring its obligation to do so. See America Decl. ¶¶ 6-7.

A DRC associate, Linda Oparnica, attempted to contact SBA on fourteen separate occasions between April 25, 2002 and June 4, 2002. See DRC Reference Check Report, Exh. 3 to Mot., at 1 ("Reference Check Report"). She succeeded on at least three occasions. See id. On May 2, 2002, Oparnica spoke with Linda Rusche, the OFA manager in Kansas City, who was to have been America's supervisor after his geographic reassignment. See id. Rusche stated that she had never worked with America and suggested that DRC contact the SBA's office in Washington, D.C. See id. at 2. Rusche further stated that DRC "could start with Personnel, but I couldn't suggest anyone specifically." Id.

On May 11, 2002, Oparnica contacted Arnold Rosenthal, OFA's Assistant Administrator for Borrower and Lender Servicing, who did not refer her to the Human Resources Department. He spoke highly of America's intellect and interpersonal skills, and said America was "a very bright think tank-type of individual," and that "he's a very good guy. I really think his strength is, he is a think tank-type of guy. High level thinker. He may not be the guy to take it to the next step, but he is very good about identifying ideas. He's very smart." Reference Check Report at 2-3. Rosenthal said he would hire America again, "for the right position.

Nobody is right for everything. I think he has a lot to offer. Just make sure you put him in the right slot. That's all." Id. at 3. Rosenthal also made reference to "an internal battle going on with his transfer" to Kansas City. Id. When Oparnica asked whether there was "anything else [she] should know" before proceeding with her reference check, Rosenthal stated: "No. I would be the best person to talk to." Id.

On June 4, 2002, Oparnica called OFA Director Jane Butler regarding Mr. America. Butler immediately referred the call to the Office of Human Resources.

Stating that both Ms. Rusche and Mr. Rosenthal had breached the Settlement Agreement by failing to refer DRC's phone calls to the Office of Human Resources, plaintiff sent a letter to defendant on August 6, 2002, requesting that it re-open plaintiff's Title VII claims. See August 6, 2002 Letter from Elizabeth L. Newman (plaintiff's counsel) to Eugene Cornelius, SBA, Ex. 2 to Mot., at 2. On September 24, 2002, having received no reply from defendant, plaintiff appealed for relief to the Equal Employment Opportunity Commission ("EEOC") pursuant to 29 C.F.R. § 1614.504(b). See Opp. at 7.[3]

Defendant sent plaintiff a letter on October 25, 2002 agreeing to reinstate his complaints. See October 25, 2002 Letter from SBA to America, Exh. 4 to Mot. As a result, on May 30, 2003, the EEOC dismissed plaintiff's appeal as moot and gave plaintiff a notice of his

---

[3]   29 C.F.R. § 1614.504(b) provides in relevant part that "[t]he agency shall resolve the matter and respond to the complainant, in writing. If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination as to whether the agency has complied with the terms of the settlement agreement or decision. The complainant may file such an appeal 35 days after he or she has served the agency with the allegations of noncompliance, but must file an appeal within 30 days of his or her receipt of an agency's determination."

right to sue in federal court. See America v. Barreto, 2003 WL 21302541, at *1-3 (EEOC Appeal No. 01A30721, May 30, 2003). Plaintiff filed a complaint in this Court on August 28, 2003.

On September 3, 2003, plaintiff's counsel tendered to the SBA checks totaling $92,500, the amount given to plaintiff under the Settlement Agreement, because plaintiff had opted to pursue his claims in federal court after he discovered defendant's alleged breach. But on September 5, 2003, defendant sent plaintiff a letter formally rescinding its October 25, 2002 determination that it had breached the Settlement Agreement and its reinstatement of America's claim. SBA based this rescission on the fact that "subsequent to the date of [the October 2002 letter], we have learned that the telephone calls to which you referred in your August 6, 2002, letter were not, in fact, placed by a prospective employer. . . . Accordingly, it has been determined that a breach of paragraph 6 of the settlement agreement did not occur." September 5, 2003 Letter from SBA to America, Exh. 7 to Mot.

II. DISCUSSION

*A. The Relevant Legal Standards*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits or declarations, if any, show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for

summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255; see also Washington Post Co. v. U.S. Dept. of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).  But the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  See FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor.  Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.

Settlement agreements "are in the nature of contracts."  See Makins v. District of Columbia, 277 F.3d 544, 546-47 (D.C. Cir. 2002) (citing Gaines v. Cont'l Mortgage & Inv. Corp., 865 F.2d 375, 378 (D.C. Cir. 1989)).  "In cases in which the dispositive issue involves the construction of a contract, summary judgment may be appropriate if the provisions of the contract are unambiguous."  Davis v. Chevy Chase Financial Ltd., 667 F.2d 160, 169 (D.C. Cir. 1981); see also America First Inv. Corp. v. Goland, 925 F.2d 1518, 1520 (D.C. Cir. 1991); Farmland Industries, Inc. v. Grain Bd. of Iraq, 904 F.2d 732, 735-36 (D.C. Cir. 1990); Minebea Co. v. Papst, 374 F. Supp. 2d 202, 208-09 (D.D.C. 2005).  Furthermore, it is settled that whether a contract term is or is not ambiguous is a question to be determined by the court.  See Minebea Co. v. Papst, 374 F. Supp. 2d at 208-09; Carey Canada, Inc. v. California Union Ins. Co., 708 F. Supp. 1, 4 (D.D.C. 1989).  With respect to assertions that a contract has been breached, "[t]he determination whether a material breach has occurred is generally a question of fact.

Nevertheless, the materiality of a breach of contract is not always a question of fact, even if the issue is disputed; thus, if there is only one reasonable conclusion, a court must address what is ordinarily a factual question as a question of law." 23 WILLISTON ON CONTRACTS § 63:3 (4th ed.).

### B. Is Defendant Bound By its Initial Determination of Breach?

Plaintiff first asserts that defendant's argument that plaintiff's claims are barred by the Settlement Agreement is foreclosed by defendant's initial determination (as expressed in its October 25, 2002 letter to plaintiff) that it had breached the Settlement Agreement and its agreement to reinstate plaintiff's complaints. According to plaintiff, defendant's concession "was made in the course of the defined regulatory procedures for resolving issues of breach, and is binding on the SBA[,]" defendant's attempt to withdraw that determination by means of the September 5, 2003 letter notwithstanding. Opp. at 8.

Plaintiff cites numerous cases for the proposition that "[w]hen a federal agency makes a determination that is favorable to a complainant in the EEO process, it is bound by that determination, and may not later abandon it to pursue a contrary position in litigation." Opp. at 8. Those cases, however, establish no such rule. Most of the cases cited stand for the proposition that federal courts are required to enforce final EEO decisions favorable to employees. See, e.g., Moore v. Devine, 780 F.2d 1559, 1564 (11th Cir. 1986); Pecker v. Heckler, 801 F.2d 709, 711 n.3 (4th Cir. 1986); Rochon v. Attorney General of the United States, 710 F.Supp 377, 379 (D.D.C. 1989). This case is distinguishable from those cited by plaintiff because there has been no final EEOC decision on the merits regarding either discrimination or

breach of the agreement.  In this case, the EEOC never decided on the merits whether the Settlement Agreement was breached – it stated only that the appeal was withdrawn because the SBA had reinstated America's claims.  See America v. Barreto, 2003 WL 21302541 at *3 ("[T]his is not a decision on the merits of complainant's claim.").  Neither the EEOC nor the SBA made any decision relating to plaintiff's underlying employment claims.  Id.

Even if the SBA had never attempted to rescind its determination that a breach of the settlement had occurred, such a determination would not have any substantive significance in this Court, because this Court must make an independent factual determination of whether or not a breach occurred.  See Saksenasingh v. Sec'y of Educ., 126 F.3d 347, 350 (D.C. Cir. 1997) ("Where a party raises a settlement agreement as a defense, the District Court must factually determine the issues surrounding the agreement.") (citing Bowden v. U.S., 106 F.3d 433, 499 (D.C. Cir. 1997)).

### C.  Did the Defendant Breach the Agreement?

Defendant's chief contention in support of its motion for summary judgment is that the Settlement Agreement precludes plaintiff's suit.  Plaintiff responds that two of defendant's employees  – Linda Rusche and Arnold Rosenthal – breached paragraph six of the Settlement Agreement.  Paragraph six states:

> The Agency will remove and expunge from Complainant's Office Personnel Folder ("OPF"), and from the official and personal files of Complainant's last line supervisors in the Office of Financial Assistance ("OFA"), all documentation and references, if any, relating to his removal from the Federal Service, which would have become effective in March of 1997, and all documentation and references, if any, to any periods identified as Absent Without Leave ("AWOL") during 1996 and 1997 (such periods of AWOL

> will be converted to Leaves Without Pay). In addition, *all inquiries from prospective employers received by OFA shall be referred to and handled by the Agency's Office of Human Resources*.

Settlement Ag. at ¶ 6 (emphasis added). Plaintiff argues that the plain language of paragraph six was breached on each of the occasions that the DRC caller was not immediately directed to SBA's Human Resources Department. Since a "central feature of the agreement was to clean up America's record," in plaintiff's view, the Settlement Agreement bars defendant's employees from speaking with "prospective employers" for any period longer than is necessary to direct these callers to SBA's Human Resources Department. Opp. at 13. Although "prospective employer" is not defined in the Settlement Agreement, plaintiff asserts that the term applies to all callers who contact defendant's offices to inquire about plaintiff's work history. See Opp. at 14.

"Where a case turns on the construction of a contract, the District Court may decide the matter on summary judgment if the agreement 'admits of only one reasonable interpretation.'" Saksenasingh v. Secretary of Education, 126 F.3d at 349 (quoting UMWA 1974 Pension v. Pittston Co., 984 F.2d 469, 473 (D.C. Cir. 1993)). Defendant argues that a plain reading makes clear that the Settlement Agreement was not breached because the term "prospective employer" plainly and literally does not include reference checking companies. See Mot. at 14. The Court agrees with this statement so far as it goes. But the provision requires an employee of the defendant to have no substantive communications with prospective employers, and to immediately forward calls from such persons to its Human Resources Department. There is no question that Ms. Rusche and Mr. Rosenthal reasonably believed that the caller from DRC was in fact a prospective employer and they still did not comply with that requirement. The

defendant therefore breached the Settlement Agreement when its employees did not immediately forward DRC's telephone calls to defendant's Human Resources Department as required by paragraph six of the Settlement Agreement.

The fact that Ms. Oparnica was not in fact a prospective employer, but a tester employed by America, does not preclude relief under Title VII.  The Supreme Court has long recognized the value of testers with respect to civil rights claims.  See Havens Realty Corp. v. Coleman, 455 U.S. 363, 373-74 (1982) ("A tester who has been the object of a misrepresentation made unlawful under the [Civil Rights Act] has suffered injury in precisely the form the statute was intended to guard against . . . [T]hat the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury.").  "Recognizing tester standing is consistent with the statute's purpose.  Title VII reflects the strong public interest in eradicating discrimination from the workplace." Kyles v. J.K. Guardian Security, 222 F.3d 289, 298 (7th Cir. 2000).

*D. Was the Breach Material?*

Finally, defendant argues that the conversations between Ms. Oparnica and Mr. Rosenthal and Ms. Rusche, respectively, were at most technical breaches of the Settlement Agreement.  Such breaches, it argues, are insufficient to warrant rescission of the Settlement Agreement and reinstatement of plaintiff's Title VII claims, because the contract was substantially performed at the point of the alleged breach.  See Mot. at 14.  During Ms. Oparnica's call with Linda Rusche, Ms. Rusche said nothing substantive about the plaintiff.  She

said only that she was involved in his job transfer from Washington to Kansas City (where she was a supervisor), "but he did not report. . . . He left the agency instead. . . . I'm not even sure about the circumstances under which he left. . . . I really don't have any idea." Reference Check Report at 2. She also suggested that Ms. Oparnica call Washington, and stated "I guess you could start with Personnel." Id.

During Ms. Oparnica's call with Arnold Rosenthal, Mr. Rosenthal confirmed that plaintiff had worked for defendant and that he also "worked up in the financial assistance for awhile . . . [h]e oversaw the program." Reference Check Report at 2. Mr. Rosenthal also stated that defendant was "a very good guy," a "high level thinker," and "very bright." Id. In response to a question as to whether Mr. Rosenthal would hire defendant, Mr. Rosenthal answered "[s]ure . . . for the right position." Id. at 3.

Defendant argues that the substance of these calls caused no harm to plaintiff and therefore cannot form the basis for a material breach; the contract was substantially performed. See Mot. at 12-13. Defendant also asserts that the recommendation letter given to plaintiff as an addendum to the Settlement Agreement obviates the need for employers to contact defendant at all. See id. at 16; Settlement Ag. ¶ 9. Finally, because DRC was not a genuine prospective employer, defendant argues that plaintiff suffered no tangible harm as a result of the alleged breach. See Mot. at 14. Plaintiff responds that the breach was material because the comments "portrayed Mr. America in a very poor light" in a number of ways, including Mr. Rosenthal's comment that "he may not be the guy to take it to the next step," and the disclosure of the fact that there were internal battles waged over his transfer. Opp. at 12. Plaintiff also asserts that Ms. Rusche "spoke openly and negatively about Richard America to DRC." Id.

-11-

Whether a breach of contract is material or, conversely, whether it has been substantially performed turns on the extent to which plaintiff will be deprived of the benefit which he reasonably expected under the contract; the extent to which the plaintiff can be adequately compensated for the part of that benefit of which he will be deprived; the extent to which the defendant will suffer forfeiture; the likelihood that the defendant will cure his failure, taking account of all the circumstances including any reasonable assurances; and the extent to which the behavior of the defendant comports with standards of good faith and fair dealing. See Greyhound Lines, Inc. v. Bender, 595 F.Supp. 1209, 1224 (D.D.C. 1984) (citing RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981)).  Informed by these factors, the Court concludes that the question of whether or not there has been a material breach of contract in this case is a genuine issue of material fact that is in dispute.  The parties disagree, for example, about whether the comments made by defendant's employees were positive or negative, how the comments were perceived, and whether they caused harm to the plaintiff, as well as whether the contract was in fact substantially performed.  Reasonable minds certainly could differ as to whether the comments made by Mr. Rosenthal constituted a material breach of the Settlement Agreement.  A factfinder should make that decision, rather than the Court in the context of a motion for summary judgment.

Defendant also argues that plaintiff has violated the implied covenant of good faith and fair dealing and so should not be able to sue even if defendant did breach the contract, as the breach was procured through plaintiff's intentional misrepresentation.  See Mot. at 16-18.  That too is a genuine issue of material fact in dispute – to be decided by a factfinder rather than by the Court in the context of a motion for summary judgment.  See, e.g., Anserphone, Inc. v.

Bell Atlantic Corp., 955 F. Supp. 418, 430 (W.D.Pa. 1996).

In sum, the Court concludes that this matter is not appropriate for resolution on a motion for summary judgment. Accordingly, the defendant's motion to dismiss or, in the alternative, for summary judgment must be denied. A separate Order consistent with this Opinion will be issued this same day.

```
                                    ___/s/_____
                                    PAUL L. FRIEDMAN
                                    United States District Judge
```

DATE: December 27, 2006