UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
RICHARD AMERICA,                        )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )      Civil Action No. 03-1807 (PLF)
                                        )
KAREN G. MILLS,                         )
  *Administrator, Small Business Administration*,  )
                                        )
            Defendant.[1]               )
_____ )

OPINION

        Plaintiff Richard America brought this action against his former employer, the

Small Business Administration ("SBA"), for violations of Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. §§ 2000e et seq.  Defendant SBA argued that plaintiff failed to

state a claim because his allegations of discrimination against the SBA were released by a

settlement agreement signed in September 1998.  Plaintiff acknowledges the settlement

agreement but claims that it was breached by the defendant and thus does not bar this lawsuit.

        The Court previously denied a motion by the SBA to dismiss, treating it as a

motion for summary judgment.  Discovery now has concluded and the matter is before the Court

on defendant's post-discovery motion to dismiss or for summary judgment.  Both parties rely on

materials outside the pleadings, so the Court will treat this motion as one for summary judgment.

Defendant moves for judgment on the grounds that (1) plaintiff failed to exhaust the

---

[1]     Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Administrator Karen
G. Mills has been substituted for former Administrator Steven Preston.  FED. R. CIV. P. 25(d).

administrative remedies called for by the settlement agreement, and (2) plaintiff cannot show that

defendant in fact breached the agreement.  After careful consideration of the parties' papers, the

relevant case law and the entire history of the case, the Court rejects defendant's arguments and

finds that genuine disputes as to material facts remain that can only be resolved by trial.[2]  The

Court therefore will deny defendant's motion.

## I.  BACKGROUND

The Court's Opinion of December 27, 2006 describes the factual background to

this dispute, which need not be repeated here.  See America v. Preston, 468 F. Supp. 2d 118

(D.D.C. 2006).  What is important is that the parties entered into a settlement agreement on

September 11, 1998 which resolved all of plaintiff's discrimination complaints (the "Settlement

Agreement").  See Mot., Ex. 1, Settlement Agreement.  Paragraph 6 of the Settlement Agreement

stated that "all inquiries [about plaintiff] from prospective employers received by OFA shall be

referred to and handled by the Agency's Office of Human Resources."  Id. ¶ 6.  The Settlement

Agreement also provided that if plaintiff believed that the SBA had failed to comply fully with

the terms of the Settlement Agreement, plaintiff shall

> notify the Agency's Assistant Administrator for Equal
> Employment Opportunity and Civil Rights Compliance, in writing
> and in accordance with the provisions of Title 29, Code of Federal
> Regulations, Section 1614.504, of the alleged non-compliance
> within thirty (30) calendar days of when he knew or should have
> known of the alleged noncompliance, and may request that the

---

[2]     The papers submitted in connection with this motion include: Defendant's Post-Discovery Motion to Dismiss or, in the Alternative, for Summary Judgment ("Mot."); Plaintiff's Opposition to Defendant's Motion to Dismiss or for Summary Judgment ("Opp."); and Defendant's Reply in Support of SBA's Post Discovery Motion to Dismiss or, in the Alternative, for Summary Judgment.

terms of this Settlement Agreement be specifically implemented
or, alternatively, that the formal EEO administrative process be
reinstated from the point processing ceased.

Id. ¶ 10.

This Court previously held that defendant had breached the Settlement Agreement
when its employees did not immediately forward telephone calls by Linda Oparnica of
Documented Reference Check ("DRC") to defendant's Human Resources Department as
required by paragraph 6 of the Settlement Agreement.  See America v. Preston, 468 F. Supp. 2d
at 123-24.  It also held that the question of whether the breach was material, and therefore
whether rescission of the Settlement Agreement and reinstatement of plaintiff's Title VII claims
was appropriate, was a question for a jury.  See id. at 124-25.  Based upon information produced
in discovery, defendant now moves for summary judgment on different grounds — (1) that by
not contacting the EEO Administrator upon learning of an alleged breach of the Settlement
Agreement in 2000, plaintiff failed to exhaust his administrative remedies under the Agreement
and thereby waived his right to assert further alleged breaches later; and (2) that plaintiff cannot
prove, with admissible evidence, that the alleged 2002 conversations actually occurred.

II.  STANDARD OF REVIEW

Summary judgment may be granted if "the pleadings, the discovery and disclosure
materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.
56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v.
Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect

the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).

An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895. When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). He is required to provide evidence that would permit a reasonable jury to find in his favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. at 380 ("[W]here the record

4

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support his claims."  <u>Freedman v. MCI Telecommunications Corp.</u>, 255 F.3d 840, 845 (D.C. Cir. 2001).

## III.  DISCUSSION

### A.  Failure to Act upon 2000 DRC Report

Defendant argues that plaintiff's claims should be dismissed because plaintiff did not contact the EEO Director within thirty days of having received a report from DRC in December 2000 (the "2000 DRC Report") that SBA had violated paragraph 6 of the Settlement Agreement on September 14, 2000, as required by paragraph 10 of the Settlement Agreement.  It is undisputed that plaintiff did not contact the EEO Director or otherwise inform defendant of the alleged breach in 2000.  In fact, he did nothing until he received a second report from DRC concerning additional violations of paragraph 6 of the Settlement Agreement in 2002 (the "2002 DRC Report").  <u>See</u> <u>America v. Preston</u>, 468 F. Supp. 2d at 120-22.

Defendant argues that when plaintiff failed to act on the 2000 DRC Report, plaintiff breached paragraph 10 of the Settlement Agreement, which requires exhaustion of administrative remedies and incorporates the exhaustion requirements of 29 C.F.R. § 1614.504. <u>See</u> Settlement Agreement ¶ 10.[3]  Had plaintiff notified the EEO Director upon learning of a

---

[3]        The parties' papers sometimes conflate two separate arguments:  first, that plaintiff failed to exhaust his administrative remedies as required by the EEO regulations; and second, that plaintiff breached the Settlement Agreement by failing to comply with its paragraph 10.  The first argument borders on the frivolous.  Were plaintiff arguing that his original

breach in 2000, defendant argues, it would have put the SBA on notice and allowed it to cure any future breaches, be they technical or material.   Defendant argues that by failing to inform SBA in 2000, the plaintiff thereby waived his right to challenge any subsequent alleged breaches by defendant.   Plaintiff responds that the alleged breach in 2000 was not material; that the Settlement Agreement did not require him to act on the 2000 breach; and that even though he did not act on it, he did not waive his claims based on subsequent alleged breaches by defendant.

There is nothing in the language of the Settlement Agreement that requires plaintiff to raise every breach of the Agreement, no matter how minor or immaterial, and the Settlement Agreement does not by its terms provide any consequence for plaintiff's failure to act as described in paragraph 10.   As plaintiff points out, to reach the conclusion suggested by defendant would be nonsensical — in order to maintain the right to enforce any provision of a settlement agreement in the future, an employee would have to report every perceived breach, even the most technical.   To infer such a requirement would put an enormous burden on the employee — to engage in administrative litigation at the merest whiff of a breach or risk losing the right to challenge substantive violations of a settlement agreement down the road, even when

_____

discrimination claims were revived based on defendant's alleged breach in 2000, his claim might well be barred for failure to exhaust his administrative remedies under the EEO regulations.   See 29 C.F.R. § 1614.504(a).   But this case involves a challenge to an alleged breach of the Settlement Agreement in 2002, not the 2000 breach or the underlying discrimination claims. Defendant cites no authority for the proposition that a failure to exhaust with respect to an initial breach of a settlement agreement bars *all* challenges to *subsequent* alleged breaches of the settlement agreement.   Nor does the Court find any support for this proposition in the language of the regulation on which defendant relies, in the Settlement Agreement, or in the case law. Indeed, particularly since the Supreme Court's decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), courts scrupulously distinguish between various alleged discrete incidents of discrimination to determine which were exhausted and therefore are actionable and which were not exhausted.   Plaintiff's failure to act upon the 2000 DRC Report does not bar his current claims.

success might entitle him to no remedy at all or, at most, to nominal damages rather than to rescission or anything substantial.  See Greenwich Ins. Co. v. Ice Contrs., Inc., 541 F. Supp. 2d 327, 333 (D.D.C. 2008) (to prevail on breach of contract claim, plaintiff must demonstrate damages resulting from alleged breach); Bahiman v. 3407-9-11 29th St., N.W., Inc., Civil Action No. 89-0576 at *4-5 (D.D.C. July 19, 1990) ("if a party's breach of a contract is immaterial, the aggrieved party may not cancel the contract and may only sue to collect damages resulting from the partial breach.") (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 236, 241 (1981)).

Furthermore, the Settlement Agreement does not expressly state that the failure to exhaust under the Agreement constitutes a waiver of the right to claim a separate breach of the terms of the Settlement Agreement later.  In the absence of a clear right or obligation set forth in the language of a contract — and a settlement agreement is a contract[4] — a court should not lightly find an implied right or obligation.  For a waiver to be implied from conduct, "the acts, conduct or circumstances relied upon to show waiver must make out a clear case."  First Annapolis Bancorp, Inc. v. United States, 75 Fed. Cl. 280, 290 (Fed. Cl. 2007).  Defendant did not even *know* of plaintiff's supposed waiver of his contractual rights until discovery in the current litigation, and defendant therefore cannot claim to have reasonably believed that plaintiff relinquished his rights to neutral reference calls under the Settlement Agreement when defendant allegedly breached the Agreement again in 2002.  See Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1252 (Fed Cir. 2007) ("[i]mplied waiver may be inferred by conduct or actions that mislead the breaching party into *reasonably believing* that the rights to a claim

---

[4]     See Lindell v. Landis Corp. 401(k) Plan, Civil Action No. 08-1462, 2009 U.S. Dist. LEXIS 65228 at *5 (D.D.C. July 28, 2009); Dodge v. Trustees of Nat'l Gallery of Art, 326 F. Supp. 2d 1, 9 (D.D.C. 2004).

arising from the breach was waived") (emphasis added).

### B.  The 2002 DRC Report

Defendant next argues that summary judgment should be granted in its favor because there is no competent, admissible evidence to show that it breached the Settlement Agreement.  Specifically, it argues that plaintiff cannot prove that the phone conversations identified in the 2002 DRC Report ever occurred.  First, defendant argues that the only evidence of the phone calls (the 2002 DRC Report itself) is unauthenticated and otherwise inadmissible, and that the phone calls described in the Report therefore cannot be relied upon to defeat summary judgment.  Second, defendant argues that defendant has proffered sufficient evidence to show that the conversations identified in the 2002 DRC Report in fact never took place.

### 1. Admissibility of the 2002 DRC Report

Ms. Oparnica testified at her deposition that she cannot remember Mr. America or the 2002 DRC Report specifically, but that the 2002 DRC Report looked like a transcription report that she did for DRC.  See Mot., Ex. 4, Videotaped Deposition of Linda Oparnica Gonchar ("Oparnica Dep.") at 29-30.  She explained that when conducting reference checks for DRC, she made the calls from home based on a script provided by DRC.  See Oparnica Dep. at 17, 19.  She created a log of attempted phone calls and transcribed any actual conversations.  See id. at 19, 23.  She would send an electronic version of a draft report to her supervisor, Mike Rankin.  See id. at 90.  He would "go through and make sure that everything was in order" and send it on to the client.  Id.  Although Ms. Oparnica's signature appears at the bottom of the 2002 DRC Report certifying that the contents are true and correct, she testified that she did not have the opportunity

to review the final version of the report.  Id. at 95.  Therefore, when asked at her deposition

whether it is "possible" that Mr. Rankin made substantive changes to the 2002 DRC Report, she

responded:  "Anything is possible."  Id. at 95.[5]

On the basis of this testimony, defendant argues that the 2002 DRC Report cannot

be authenticated and, that even if it could, it is inadmissible hearsay and therefore cannot be

relied upon to defeat summary judgment.  In the absence of proof that the 2002 DRC Report

accurately reflects the alleged conversations between Ms. Oparnica and the SBA employees,

defendant maintains, plaintiff has no case.  Defendant makes much of the fact that Ms. Oparnica

cannot now remember making the specific phone calls in question and that she did not have

control over the final report prior to its being sent to the client (in this case, the plaintiff).

Defendant argues that Mr. Rankin could have made any change he wished to her report and may

have had incentive to do so to produce a "favorable" report for the client.

The Federal Rules of Evidence provide that "[t]he requirement of authentication

or identification as a condition precedent to admissibility is satisfied by evidence sufficient to

support a finding that the matter in question is what its proponent claims."  FED. R. EVID. 901(a).

The threshold for the Court's determination of authenticity is not high.  See United States v.

Safavian, 435 F. Supp. 2d 36, 38 (D.D.C. 2006) (citing United States v. Reilly, 33 F.3d 1396,

1404 (3d Cir. 1994) ("the burden of proof for authentication is slight")); see also United States v.

Holmquist, 36 F.3d 154, 168 (1st Cir. 1994) ("the standard for authentication, and hence for

admissibility, is one of reasonable likelihood"); United States v. Coohey, 11 F.3d 97, 99 (8th Cir.

---

[5]        Mr. Rankin's signature appears at the bottom of the 2002 DRC Report stating that
he reviewed it, see 2002 DRC Report at 6, but neither party has been able to locate Mr. Rankin.

1993) ("the proponent need only demonstrate a rational basis for its claim that the evidence is

what the proponent asserts it to be")).  The question for the Court under Rule 901 is whether the

proponent of the evidence has "offered a foundation from which the jury could reasonably find

that the evidence is what the proponent says it is."  United States v. Safavian, 435 F. Supp. 2d at

38.  The Court need not find that the evidence is necessarily what the proponent claims, but only

that there is sufficient evidence so that the jury ultimately might do so.  See id.

   Defendant's challenge to the 2002 DRC Report addresses whether its *contents* are

true and accurate, but does not raise a challenge to whether the 2002 DRC Report is what it

purports to be — namely a Reference Check Report produced by DRC.  Sufficient evidence

exists for a jury to find that the document is what plaintiff says it is.  See United States v.

Safavian, 435 F. Supp. 2d at 39.  Ms. Oparnica testified that this document is a "Reference check

for subject Richard America" that she appears to have prepared for DRC.  Oparnica Dep. at

29-30.  It bears the DRC logo at the top, is identical in format to the 2000 DRC Report, and has

her signature on it.  Id. at 30.  Compare 2002 DRC Report with Mot., Ex. 3, 2000 DRC Report.

See United States v. Safavian, 435 F. Supp. 2d at 40 (authenticating emails based on their

"distinctive characteristics").  There is sufficient evidence to conclude that the document is in

fact a Reference Check Report created by DRC for plaintiff, and it therefore passes the

authentication threshold of Rule 901(a).

   Defendant next argues that even if the Report is authenticated, it is inadmissible

hearsay — "a statement, other than one made by the declarant while testifying at the trial or

hearing, offered in evidence to prove the truth of the matter."  See FED. R. EVID. 801(c).  There

can be no doubt that the 2002 DRC Report is hearsay — indeed, the truth of the matter asserted

therein is the basis for plaintiff's case.  Plaintiff seeks to admit the 2002 DRC Report under

either of two exceptions to the hearsay rule — either as a past recollection recorded, see FED. R.

EVID. 803(5), or as a record of regularly conducted business activity.  See FED. R. EVID. 803(6).

Defendant argues that the 2002 DRC Report should not be considered on this motion and should

be excluded at trial under either exception to the hearsay rule because Ms. Oparnica does not

now recollect the contents of the original report and therefore cannot testify as to whether the

version to be introduced in evidence is accurate.  Defendant contends it may not be accurate

because Mr. Rankin had the opportunity and possibly the motivation to alter its contents.

         Defendant is correct that if the 2002 DRC Report would not be admissible at trial

under any circumstances, plaintiff could not rely on it to defeat summary judgment.  But at the

summary judgment stage "a nonmovant is not required . . . to produce evidence in a *form* that

would be admissible at trial, [but] the evidence still must be capable of being converted into

admissible evidence."  Wilburn v. Robinson, 480 F.3d 1140, 1143 n.2 (D.C. Cir. 2007) (quoting

Gleklen v. Democratic Cong. Campaign Comm., Inc., 199 F.3d 1365, 1369 (D.C. Cir. 2000))

(emphasis in original). The Court concludes that the doubts defendant raises are of a kind that

may be cured before trial, such that plaintiff may be able to produce admissible evidence.

         First, after further reviewing the 2002 DRC Report, Ms. Oparnica's recollection

may be refreshed and she may have a better recollection of the facts and circumstances than she

had at her deposition.  Second, the Court may conclude that her deposition testimony, or other

evidence submitted with briefing on subsequent motions in limine, supports the admission of the

Report as a past recollection recorded because it was "made or adopted by the witness when the

matter was fresh in [her] memory and to reflect that knowledge correctly."  FED R. EVID. 803(5);

see also Oparnica Dep. at 31-33.  As Professor Saltzburg has explained, "[i]f a witness cannot remember facts about the case in which [s]he is called to testify, but at one time had knowledge of the facts that is reflected in a memorandum or other record made or adopted by the witness when the matter was fresh in memory, the memorandum or record may be introduced into evidence." 4 SALTZBURG, ET AL., FEDERAL RULES OF EVIDENCE MANUAL § 803.02[6][a] at 803-3 (9th ed. 2006) ("SALTZBURG").  Moreover, "[i]t is sufficient if the witness testifies that [s]he knows that a record of this type is correct because it was [her] habit or practice to record such matters accurately."  Parker v. Reda, 327 F.3d 211, 214 (2d Cir. 2003) (quoting JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 803(5)[01], at 803-181 (1996)).

        The Court may also conclude based upon her deposition testimony, or other evidence, that Ms. Oparnica should be permitted to testify at trial as a "custodian or other qualified witness" that the Report was "kept in the course of a regularly conducted business activity" and that it was "the regular practice of the business activity" to make such report.  FED R. EVID. 803(6).  See Oparnica Dep. at 30-32.  Yet, even if the Court concludes that Ms. Oparnica is unable provide foundation testimony to admit the record under Rule 803(6), plaintiff may provide another witness with knowledge of DRC's record-keeping practices.  See SALTZBURG § 803.02[7][d] at 803-47-48 ("The foundation witness must know something about the record keeping process, but the witness need not have personal knowledge of any particular recording or how it was made.").  Finally, plaintiff may locate Mr. Rankin or another employee of DRC who can provide testimonial support for the conclusion that the contents of the report are substantively the same as Ms. Oparnica's transcription of the phone calls.

To repeat, if it is possible to convert potential evidence into a form that would be admissible at trial — as it appears to be in this case — the Court may consider it at the summary judgment stage.  See Wilburn v. Robinson, 480 F.3d at 1143 n.2; see also Richards v. Option One Mortgage Co., Civil Action No. 08-0007, 2009 U.S.Dist. LEXIS 77958 at*4-5 n.3 (D.D.C. August 28, 2009).  The Court will not exclude the 2002 DRC Report from consideration at this point.  Its admissibility, with or without the support of additional testimony, will be considered at trial.

### 2.   Genuine Issues of Material Fact Remain

The defendant's remaining argument in favor of summary judgment is that the reference calls reflected in the 2002 DRC Report simply did not happen.  It supports this argument with testimony from the alleged recipients of the calls that they did not receive them and that they likely were not in the office on the respective dates listed in the Report.  Defendant further notes that the veracity of reports from DRC have been called into question in another case.  See Mot. at 2.  Plaintiff responds by relying on the contents of the 2002 DRC Report and suggests explanations for how the calls could have occurred, even if the recipients were not in the office (e.g., by forwarding the calls to another location).  Plaintiff further notes that defendant did not originally challenge the veracity of the 2002 DRC Report.

The Court would be hard pressed to find a more genuinely disputed material fact: Did the calls occur or did they not?  Resolution of the parties' disagreement requires making findings as to the credibility of witnesses and the reasonableness of their explanations for events. The Court cannot make such a determination at the summary judgment stage.  See Czekalski v.

Peters, 475 F.3d at 363.  Whether or not these calls occurred and what was said on these calls —

and, accordingly, whether or not there is a basis for finding that defendant breached the

Settlement Agreement — are questions for the jury.  The Court will deny defendant's motion for

summary judgment.

An Order consistent with this Opinion will issue this same day.

_____

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   September 17, 2009

14